IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KLEON PULLER, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 15-342-RGA |
| | : | |
| DAVID PIERCE, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

## **MEMORANDUM OPINION**

Kleon Puller. *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware. Attorney for Respondents.

May __16__, 2016
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 ("Petition") filed by Petitioner Kleon Puller.  (D.I. 1)  The State filed an Answer

in opposition.  (D.I. 12)  For the reasons discussed, the Court will deny the Petition as barred by

the limitations period prescribed in 28 U.S.C. § 2244.

## I.     BACKGROUND

In 1999, Petitioner shot his then-girlfriend in the head with a .357 Magnum revolver

while his five year old niece was in the room.  (D.I. 3 at 63-64)  Petitioner admitted to shooting

his former girlfriend in the face, but maintained it was an accident.  (D.I. 12 at 4)  He testified

that he grabbed his gun for protection because he planned to go to the liquor store for cigarettes

and did not realize it was loaded.  (D.I. 3 at 53-54)  He then started arguing with his girlfriend,

"pointed the gun [] at her" in order to "scare her," and pulled the trigger after she said, "Go

ahead and shoot it."  (D.I. 3 at 55)  According to Petitioner, he expected to hear only a "click,"

but was "in shock" when he heard a "bang."  *Id.*  Although the victim survived the shooting, she

was left blind in both eyes, badly disfigured, and brain damaged.  (D.I. 12 at 4)

In March 2001, a Delaware Superior Court jury convicted Petitioner of attempted first

degree murder, possession of a firearm during the commission of a felony, and endangering the

welfare of a child.  *See Puller v. State*, 108 A.3d 1225 (Table), 2015 WL 428582 (Del. Jan. 30,

2015).  On June 29, 2001, Petitioner was sentenced to life for his attempted murder conviction,

five years of incarceration for his possession of a firearm conviction, and one year of probation

for endangering the welfare of a child conviction.  (D.I. 12 at 1)  Petitioner appealed, and the

Delaware Supreme Court affirmed his convictions and sentences on April 5, 2002.  *See Puller v.*

*State*, 794 A.2d 1160 (Table), 2002 WL 529909, at *1 (Del. Apr. 5, 2002).

On January 5, 2012, Petitioner filed a *pro se* motion for post-conviction relief pursuant to to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 14, Del. Super. Ct. Crim. Dkt. Entry No. 42)  The Delaware Superior Court denied the Rule 61 motion, *See State v. Puller*, 2014 WL 4101616 (Del. Super. Ct. Aug. 21, 2014), and the Delaware Supreme Court affirmed that decision on January 30, 2015. *See Puller*, 2015 WL 428582, at *3.

The instant Petition is dated April 15, 2015. (D.I. 1)  It asserts twelve ineffective assistance of counsel claims.

## II.      ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2)(statutory tolling).

2

Petitioner does not assert, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D).  Consequently, the Court concludes that the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).  In this case, the Delaware Supreme Court affirmed Petitioner's convictions and sentence on April 5, 2002, and he did not file a petition for a writ of certiorari in the United States Supreme Court.  As a result, Petitioner's convictions became final on July 5, 2002.  Applying the one-year limitations period to that date, Petitioner had until July 7, 2003[1] to timely file a habeas petition. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005)(Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015)(AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run).  Petitioner, however, did not file the instant Petition until April 15, 2015,[2]

_____

[1]AEDPA's limitations period actually expired on July 5, 2003, which was a Saturday.  Therefore, Petitioner had until the end of the day on Monday, July 7, 2003, to timely file his Petition. *See* Fed. R. Civ. P. 6(a)(1)(C).

[2]Pursuant to the prisoner mailbox rule, the Court adopts as the filing date April 15, 2015, which is the date on the Petition. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)(the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

almost twelve full years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The Court will discuss each doctrine in turn.

### A.  Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, Petitioner's Rule 61 motion, filed on January 5, 2012, has no statutory tolling effect because it was filed more than eight years after AEDPA's limitations period expired. Thus, the Petition is time-barred, unless equitable tolling applies.

### B.  Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is

4

unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 400 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

Petitioner concedes that his Petition is untimely, but contends that the limitations period should be equitably tolled because he is actually innocent of attempted first degree murder. (D.I. 1 at 13; D.I. 2 at 10) Specifically, he asserts that he shot his girlfriend by accident, and that he was not attempting to murder her.

In *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013), the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. However, the *McQuiggin* Court cautioned that "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 1928. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In the Third Circuit, evidence is "new" for the purposes of the *Schlup* standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence,[3] except in

_____

[3]The circuits addressing the issue are split over what constitutes "new" evidence for *Schlup* purposes. The Eighth Circuit's interpretation of "new" evidence corresponds with the Third Circuit's, whereas the Seventh and the Ninth Circuits do not require the exercise of due

5

situations where that evidence was not discovered due to the ineffective assistance of trial counsel. *See Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010). In turn, when determining if a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006). Finally, a court "may consider how the timing of the submission [of actual innocence] and the likely credibility of the affiant[] bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332; *see also McQuiggin*, 133 S.Ct. at 1935.

Here, Petitioner asserted the same "shooting by accident" defense during his trial. Therefore, equitable tolling is not warranted because his current assertion fails to constitute new reliable evidence satisfying the *McQuiggin/Schlup* standard.

Petitioner also appears to contend that the limitations period should be equitably tolled pursuant to the holding in *Martinez v. Ryan*, 132 S.Ct 1309 (2012). (D.I. 1 at 13-14) Once again, his argument is unavailing. By its own terms, the Supreme Court's *Martinez* decision provides a petitioner with an opportunity to overcome the procedural default of a claim asserting ineffective assistance of trial counsel, but does not impact a petitioner's obligation to comply with AEDPA's limitations period. *See Robertson v. Pierce*, 2015 WL 4634829, at \*5 (D. Del. Aug. 3, 2015). To the extent Petitioner's late filing was the result of his own miscalculation of the one-year filing period, such mistakes do not justify equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at \*5-6 (D. Del. May 14, 2004).

---

diligence, and view "new" evidence as evidence that was not "presented" at trial. *See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011)(collecting cases).

6

For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will dismiss the instant Petition as time-barred.[4]

## III.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV.   CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied as time-barred. An appropriate Order will be entered.

---

[4]The Court's conclusion that it must dismiss the Petition as time-barred obviates the need for the Court to address the State's alternative reasons for denying the Petition.

7